572 A.2d 599
IN THE MATTER OF JEROME E. OKONIEWSKI, AN
ATTORNEY AT LAW.

March 13, 1990.

## ORDER

The Disciplinary Review Board having filed a report with the Supreme Court recommending that the suspension of JEROME E. OKONIEWSKI of MILLVILLE, who was admitted to the bar of this State in 1960, and who has been suspended from the practice of law since March 16, 1983, be deemed sufficient discipline for his ethical infractions and the Disciplinary Review Board having further recommended that any application by respondent for reinstatement to practice be accompanied by medical proofs that he is mentally and physically fit to return to the practice of law and that his readmission to practice be conditioned on successful completion of the Skills and Methods core courses offered by the Institute for Continuing Legal Education, and the Disciplinary Review Board's recommendation being based on its conclusion that: 1) respondent had abandoned his law practice at some point between 1978 and 1982, that a pattern of gross neglect in respondent's handling of two estate matters was one consequence of that abandonment; 2) respondent failed to comply with various court directives, and 3) he failed to cooperate in ethics matters, and good cause appearing;

It is ORDERED the findings and recommendation of the Disciplinary Review Board are hereby adopted and that the suspension that JEROME E. OKONIEWSKI has served since March 16, 1983, is deemed sufficient discipline for his ethical infractions, and it is further

470

ORDERED that respondent's reinstatement to the practice of law is conditioned on the requirement that he submit medical proofs that he is mentally and physically fit to return to the practice of law in accompaniment with any application that he may make for his reinstatement to the practice of law and on his submission of proofs of successful completion of the Skills and Methods core courses offered by the Institute for Continuing Legal Education; and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file of said JEROME E. OKONIEWSKI as an attorney at law of the State of New Jersey; and it is further

ORDERED that JEROME E. OKONIEWSKI continue to be restrained and enjoined from practicing law during the period of his suspension and to continue his compliance with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with suspended attorneys; and it is further

ORDERED that JEROME E. OKONIEWSKI reimburse the Ethics Financial Committee for appropriate administrative costs.

This matter is before the Board based on a presentment filed by the District IV Ethics Committee. That presentment concerns respondent's conduct as an attorney in two underlying ethics grievances.

Respondent, who was admitted to practice law in 1960, was engaged in the private practice of law in Millville, New Jersey. At the genesis of the problems detailed in the presentment, respondent was a named partner in the firm of Okoniewski, DiStefano and Bronkesh. Respondent was suspended from practice on March 16, 1983. The pertinent facts of the two grievances follow:

## I. THE REGALBUTO MATTER

In the mid–1970s, respondent was retained to act as trustee for Vito Regalbuto (Vito), brother of Nazareno Regalbuto, the grievant herein. An unspecified sum of money was given to respondent to invest on behalf of Vito. Respondent apparently did invest the funds, and made payments of the income on those investments to Vito until the fall of 1980. By this time, Vito was unable to care for himself and resided out of state. Respondent did not provide any explanation for the cessation of the payments to either Vito or the grievant, despite a number of inquiries and requests for an accounting.

A formal complaint, charging respondent with gross neglect, contrary to *DR* 6–101, was filed on April 15, 1983. In the second count of that complaint, respondent was also charged with failure to cooperate with the investigation by the District IV Ethics Committee. Proceedings before the district committee were held in abeyance for a lengthy period of time because the grievant was involved in civil litigation on this very same matter with respondent.

At hearing before the District IV Ethics Committee, the presenter advised that the grievant no longer wished to pursue the ethics matter, in light of an unspecified payment received as a result of the civil litigation.[1] The committee therefore dismissed the matter based on a lack of evidence of unethical conduct.

## II. THE VINCI AND GODET ESTATES

On September 30, 1980, the firm of Okoniewski, DiStefano and Bronkesh disbanded. Thereafter, several of respondent's former partners and/or associates had difficulty resolving questions regarding operation of the firm's pension fund by respondent as its Trustee. Respondent failed to answer to the in-

---

[1]The record does not disclose any attempt to insure the grievant's appearance by a subpoena.

quiries of these attorneys. Suit was subsequently filed against respondent. Respondent proved to be uncooperative in the proceedings, and failed to turn over requested documents. He failed to comply with several court orders directing him to provide particular information· to the plaintiff-attorneys. Thereafter, given respondent's failure to cooperate with clients, other counsel, and the court, an audit by an independent auditor was ordered on July 14, 1982. Respondent again failed to provide requested information, this time to the auditor, and a receiver was therefore appointed for respondent's law practice on October 27, 1982. In addition to the appointment of a receiver, respondent agreed to take a leave of absence from the municipal judgeships he held and withdraw from the practice of law, both for a 90–day period.[2] He also promised the court that he would actively participate in a psychiatric evaluation and psychiatric counseling. The record indicates that he did not fulfill this latter promise. Respondent continued to exhibit a non-cooperative attitude, and frequently failed to turn over requested information to the. receiver.

Despite respondent's lack of cooperation, the receiver was able to bring some semblance of order to the chaos that remained when respondent, in essence, abandoned his practice. Among other things, the receiver discovered that respondent had neglected two separate estate matters. Respondent had represented the estate of Mary Vinci, following her demise in December, 1976. When his law firm disbanded in 1979, respondent promised the executor that he would continue to handle the case. However, over the next three years, respondent failed to take any action. He was confronted by the executor on many occasions between 1979 and 1982, and he always

[2]Respondent served as a municipal court judge for Millville as well as for Lawrence Township and Mannington Township during this period. When he voluntarily took a leave of absence from these three judgeships in October 1982, it was discovered that, in each jurisdiction, he had reserved decision for as long as one and one-half years on as many as 15 to 20 serious cases, which included drunk-driving matters.

promised to take care of the case. Nonetheless, respondent failed to carry out his promises. Upon reviewing the file, the receiver discovered that respondent had never filed an inheritance tax return or federal tax return, although the estate had been pending for nearly seven years.

Following the death of Belle Godet in 1979, respondent was retained to handle her estate. He failed to take any action on that matter. He never filed any inheritance tax returns or performed other necessary legal services to settle the estate.

During this same period of time, respondent failed to file the annual corporate tax returns for numerous clients, and did not maintain proper attorney financial records.

The committee concluded that respondent exhibited a pattern of gross negligence by his failure to act in the *Godet* and *Vinci* estates, together with his failure to maintain proper financial records and failure to file numerous corporate tax returns.

Respondent was also charged with failure to cooperate with the court-appointed accountant and receiver who were reviewing his law practice, and with willful failure to obey various court orders related to his law practice. The record shows that respondent failed to comply with at least three separate court orders related to the pension fund civil action. Specifically, although respondent appeared in Superior Court in response to an Order to Show Cause returnable on June 28, 1982 (and subsequently continued to June 30, 1982), he failed to bring with him the books and records specified in that order. The matter was, therefore, continued to July 7, 1982, at which time respondent failed to appear. In response, by order dated July 14, 1982, the court appointed an accountant to audit the "Jerome E. Okoniewski Pension Plan." The Court also ordered that all books and records of that plan in respondent's possession as Trustee be turned over to the accountant immediately. Respondent then failed to cooperate with the accountant, forcing yet another Order to Show Cause, dated October 21, 1982, and returnable on October 27, 1982. That order contemplated

the appointment of a receiver to dissolve the pension plan. Additionally, respondent was again ordered to bring pension plan books and records to court on the return day of the order. On October 27, respondent appeared through counsel. The requested documents were still not forthcoming. At that point, respondent agreed to the appointment of a receiver for his law practice and the pension matter. He further agreed to take a 90-day voluntary leave of absence from both the practice of law and his municipal judgeships. He also volunteered to participate in psychiatric evaluation and counseling. Respondent was thereafter suspended from the practice of law.

The committee concluded that respondent had failed to cooperate with both the accountant and the receiver and had willfully failed to obey the various court orders, supposedly contrary to *DR* 1-102A(5) and (6), as charged in the ethics complaint.

## CONCLUSION AND RECOMMENDATION

■ Upon a *de novo* review of the full record, the Board is satisfied that the conclusions of the ethics committee in finding respondent guilty of unethical conduct are fully supported by clear and convincing evidence.

The record demonstrates that respondent abandoned various clients, and ultimately his law practice, at some point between 1978 and 1982. The pattern of gross neglect found in respondent's handling of the *Vinci* and *Godet* estates, as discovered by the receiver, is but one consequence of that abandonment.

■ Moreover, respondent's knowing and continuing failure to comply with various court directives over a period of more than four months is inexcusable. Indeed, no justification has been presented for any of respondent's conduct, including his failure to answer one of the ethics complaints, *see In re Kern,* 68 *N.J.* 325, 345 *A.*2d 321 (1975), or to appear before both the local committee and the Board. An attorney is, however, obligated to cooperate in ethics matters. *In re Gavel,* 22 *N.J.* 248, 263, 125 *A.*2d 696 (1956). By his actions, respondent has

given the appearance of valuing neither his law practice nor his license to practice law.

An attorney, as an officer of the Court, has the duty of good faith and honorable dealing with all judicial Tribunals. *In re Turner*, 83 *N.J.* 536, 537, 539 [416 *A*.2d 894] (1980). Respondent's repetitive failure to cooperate with the Courts and the ethics bodies evidences a flagrant contempt for our judicial system. [*Matter of Winberry*, 101 *N.J.* 557, 567, 503 *A*.2d 306 (1986).]

Cases similar to respondent's generally result in suspension from the practice of law. *See, e.g. In re Rogovoy*, 100 *N.J.* 556, 498 *A*.2d 769 (1985) (two-year suspension imposed for failure to cooperate with local ethics committee and Supreme Court together with failure to recognize responsibilities to clients and one instance of gross negligence); *In re Smith*, 101 *N.J.* 568, 503 *A*.2d 846 (1985) (suspension for three months for failure to pursue client's interests diligently and failure to cooperate with ethics committee or answer complaint); *In re Winberry, supra* (suspension for two years for failure to handle an estate properly together with a pattern of contumacious behavior and delay tactics).

The purpose of discipline, however, is not the punishment of the offender, but "protection of the public against the attorney who cannot or will not measure up to the high standards of responsibility required of every member of the profession." *In re Getchius*, 88 *N.J.* 269, 276, 440 *A*.2d 1341 (1982), citing *In re Stout*, 75 *N.J.* 321, 325, 382 *A*.2d 630 (1978). The severity of discipline to be imposed must agree with the nature of the unethical conduct considering all relevant circumstances. *In re Nigohosian*, 88 *N.J.* 308, 315, 442 *A*.2d 1007 (1982). Although mitigating factors are relevant, *In re Hughes*, 90 *N.J.* 32, 36, 446 *A*.2d 1208 (1982), none has been presented here.

The Board is aware that respondent was temporarily suspended on March 16, 1983. Accordingly, the Board unanimously recommends that respondent's suspension be deemed sufficient discipline for his infraction. The Board is concerned that, while there are indications that respondent may be suffering from either a psychiatric problem or alcoholism, the record

is bereft of any evidence in that regard. Therefore, prior to consideration of any request for reinstatement, the Board recommends that respondent be required to produce medical proofs that he is both mentally and physically fit to return to the practice of law. The Board further recommends that respondent's readmission to practice be conditioned upon his successful completion of the Skills and Methods Core Course offered by the Institute for Continuing Legal Education.

The Board further recommends that respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.